UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CONSTRUCTIVE HANDS, INC. f/k/a
DAVID SIOR d/b/a CONSTRUCTIVE
HANDS,

                         Plaintiff,

     -against-                                    1:04-CV-0939
                                                   (LEK/RFT)
TIM B. BAKER and UNNAMED
40' KETCH, her sails, engine,
appurtenances, etc., *in rem*,

                         Defendants.

_____


**MEMORANDUM-DECISION AND ORDER[1]**

**I. JURISDICTION**

        Federal Courts have original jurisdiction of claims arising under admiralty and maritime

jurisdiction.

        In its most pertinent part, 28 U.S.C. § 1333 provides that "[t]he district courts shall have
        original jurisdiction, exclusive of the courts of the States, of:... [a]ny civil case of admiralty
        or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are
        otherwise entitled."... Admiralty jurisdiction, in a breach of contract action, arises only when
        the "subject-matter of the contract is 'purely' or 'wholly' maritime in nature."

SAT Int'l Corp. v. Great White Fleet (US) Ltd., No. 03 Civ. 7481(KNF), 2006 WL 661042, at *4

(S.D.N.Y. Mar. 16, 2006) (citations omitted).  Furthermore, it should be noted that 28 U.S.C.

§ 1331 does not provide this Court with a second source of jurisdiction, as admiralty cases do not

arise under "federal question" jurisdiction.  Id. at *5.

_____

        [1] For printed publication by the Federal Reporters.

> Article III of the United States Constitution extends "judicial power" to three classes of cases: (i) "cases in law and equity, arising under this constitution, the laws of the United States, and treaties," (ii) "cases affecting ambassadors, or other public ministers and consuls," and (iii) "cases of admiralty and maritime jurisdiction."... "The constitution certainly contemplates these as three distinct classes of cases; and if they are distinct, the grant of jurisdiction over one of them, does not confer jurisdiction over the other two. The discrimination made between them, in the constitution, is... conclusive against their identity."... An admiralty case does not "arise" under the Constitution or the laws of the United States.... Rather, admiralty provides an independent source of subject matter jurisdiction for admiralty actions."

In re Millenium Seacarriers, Inc., 419 F.3d 83, 101 (2d Cir. 2005) (citing and quoting, inter alia, U.S. Const., art. III; Am. Ins. Co. v. Canter, 26 U.S. (1 Pet.) 511, 545-46 (1828); Paduano v. Yamashita, 221 F.2d 615 (2d Cir. 1955)).

All maritime contracts are within admiralty jurisdiction. Netherlands Am. Steam Navigation Co. v. Gallagher, 282 F. 171, 176 (2d Cir. 1922). And, in considering the nature of a disputed contract, "[t]he question whether a contract is maritime or not depends in this country simply on the subject-matter of the contract, and not on the place where the contract is made.... If a contract relates to a ship or to commerce on navigable waters, it is subject to the maritime law, and is within the admiralty and maritime jurisdiction, whether the contract is to be performed on land or water." Id. at 175.

Furthermore, in rem jurisdiction in the admiralty context only exists for the enforcement of a maritime lien. See Rainbow Line, Inc. v. M/V Tequila, 480 F.2d 1024, 1027-28 (2d Cir. 1973) (citing, inter alia, The Resolute, 168 U.S. 437, 440 (1897); The Rock Island Bridge, 73 U.S. 213, 215 (1867)). Maritime liens fall within admiralty jurisdiction. 2 Am. Jur. 2d Admiralty §§ 50, 125 (2005) (Section 50 comments, in part: "Admiralty jurisdiction embraces petitory as well as possessory suits. It extends to maritime liens, various maritime service claims,... and sundry other

matters.... Generally, the *maritime nature of the subject matter is the criterion of admiralty jurisdiction*.") (footnotes omitted; emphasis added).  Claims for a maritime lien may be maintained both *in rem* against the vessel, and *in personam* against the owner.  <u>See, generally,</u> <u>American Oil Trading, Inc. v. M/V SAVA</u>, 47 F. Supp. 2d 348 (E.D.N.Y. 1999); <u>O'Hara Corp. v. F/V North Star</u>, 212 B.R. 1 (D. Me. 1997); <u>Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa, SA</u>, Nos. 90 Civ. 6396 (VLB), 91 Civ. 1539 (VLB), 1994 WL 130007, at *2 (S.D.N.Y. Apr. 7, 1994) ("Except as otherwise provided by law a party who may proceed in rem may also, or in the alternative, proceed in personam against any person who may be liable.") (citing <u>Belcher Co. v. Alabama, Inc.</u>, 724 F.2d 1161, 1163 (5th Cir. 1984)).  <u>See also</u> THOMAS J. SCHOENBAUM, 1 ADMIRALTY & MARITIME LAW § 3-2, at 61 (2d ed. 1994).[2]  Federal courts have exclusive admiralty jurisdiction in matters concerning *in rem* actions for the enforcement of maritime liens.  <u>See</u> SCHOENBAUM, *supra*, § 3-2, at 60-61.

    The alleged lien in this matter arises out of a contract that relates directly to necessaries, repair and construction work performed on a boat.

---

        [2] *In personam* jurisdiction may be invoked if Plaintiff establishes that the court has personal jurisdiction over the named defendant in the action.  <u>See</u> SCHOENBAUM, *supra*, § 3-2, at 61.  Such jurisdiction is established in this case, given that Defendant Baker has submitted to the jurisdiction of this Court throughout the pre-trial and trial proceedings.  <u>See</u> <u>Robertson v. United States</u>, No. 1:03-CV-1459 (LEK), 2005 WL 1173545, at *3 (N.D.N.Y. May 4, 2005) (Kahn, D.J.) (concerning *habeas corpus* petition from criminal conviction, but noting that "[p]ersonal jurisdiction, unlike subject matter jurisdiction, is waivable in both civil and criminal trials.... A defendant waives any future challenge to personal jurisdiction by appearing in court and failing to object to the jurisdiction over his person.") (citing, *inter alia*, <u>United States v. Rosenberg</u>, 195 F.2d 583, 603 (2d Cir. 1952); <u>Pon v. United States</u>, 168 F.2d 373, 374 (1st Cir. 1948)).  <u>See also</u> FED. R. CIV. P. 12(h).  Defendant Baker is also a resident of this State, and contracted for work performed on his boat in this judicial District.  <u>See</u> Verified Complaint (Dkt. No. 1) at ¶¶ 3, 5-7; Answer (Dkt. No. 4) at ¶ 1 (denying allegations in ¶¶ 5, 7, 8 & 9 of the Complaint, but not ¶ 6 that concerns work contracted for, provided, and at issue in this case).

> The district courts have subject matter jurisdiction in such cases under Article III of the Constitution, implemented by 28 U.S.C. § 1333 and by 46 U.S.C. § 31342, which provides for maritime suits for failure to pay for necessaries to be provided to a vessel.... The Supreme Court has recently made it clear that *admiralty jurisdiction embraces all matters relating to use, support or maintenance of navigable vessels*.

Robert E. Derecktor, Inc. v. Norkin, 820 F. Supp. 791, 792-93 (S.D.N.Y. 1993) (Broderick, D.J.) (emphasis added) (Court held that it had subject matter jurisdiction over case arising out of claim for failure to pay for repairs to vessel, and counterclaim for overcharges) (citing, *inter alia*, N. Pac. S.S. Co. v. Hall Bros., 249 U.S. 119 (1919); McDermott Int'l v. Wilander, 498 U.S. 337 (1991); Exxon Corp. v. Cent. Gulf Lines, 500 U.S. 603 (1991)).  See also Compania Argentina De Navegacion Dodero v. Atlas Maritime Corp., 144 F. Supp. 13, 14 (S.D.N.Y. 1956) ("...contracts providing for the repair of a particular ship or for supplies for a particular ship have been held to be within the maritime jurisdiction of the Federal Courts.") (citing cases); 2 C.J.S. *Admiralty* § 48 (2005) ("A contract for furnishing supplies or making repairs to a vessel is within admiralty jurisdiction, even though the vessel, ready for service, has not entered service, is not in active service, or is afloat, in dry dock or hauled up upon land.  Thus, a contract to make repairs to a vessel is governed by maritime law rather than by local law.") (footnotes omitted).

Rule C(1) of the *Supplemental Rules for Admiralty and Maritime Claims* of the *Federal Rules of Civil Procedure* provides, in relevant part: "[a]n action in rem may be brought: (a) To enforce any maritime lien; [or] (b) Whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto."  FED. R. CIV. P., SUPP. R. C(1) FOR ADMIRALTY & MARITIME CLAIMS.  As this Court has previously discussed, and still holds to be true, if the plaintiff does not contend that a lien exists under federal statute, then "they must establish the existence of a maritime lien to support *in rem* jurisdiction."  Garcia v. M/V Kubbar, 4 F. Supp. 2d 99, 103

(N.D.N.Y. 1998) (Kahn, D.J.).  In doing so, the Court would have to resort to an extensive

evaluation under substantive law.  Id.  However, in the present matter, Plaintiff alleges - albeit

without citing the federal statute in the Complaint - all of the elements necessary for a finding of a

maritime lien under federal statute.  See Verified Complaint (Dkt. No. 1).  Plaintiff alleges that it

furnished supplies and repairs to Defendant vessel upon the orders of the owner of the vessel,

Defendant Baker, for which Defendant Baker did not pay in full, and that Federal jurisdiction exists

pursuant to 28 U.S.C. § 1333.[3]  Id.  Federal law provides that:

> (a) ... a person providing necessaries to a vessel on the order of the owner or a person
> authorized by the owner --
>   (1) has a maritime lien on the vessel;
>   (2) may bring a civil action in rem to enforce the lien; and
>   (3) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C. § 31342.  See also Norkin, 820 F. Supp. 791; M/V SAVA, 47 F. Supp. 2d at 351 ("There

is no dispute that [plaintiff] has satisfied the requirements of the Liens Act by furnishing

necessaries,... to the [defendant vessel] upon the order of the time charterer of the Vessel.").

This Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the

*Federal Rules of Civil Procedure*, as this case concerns claims arising from a maritime contract and

maritime lien under maritime and admiralty law.  See 28 U.S.C. § 1333(1); FED. R. CIV. P. 9(h);

Verified Complaint (Dkt. No. 1) at ¶ 1.


## II. STANDARD OF LAW

This action involves claims arising from an alleged contract for services to a boat.  Plaintiff

---

[3] Also see Plaintiff's Proposed Findings of Fact and Conclusions of Law (Dkt. No. 44),
wherein Plaintiff asserts a claim specifically falling under 46 U.S.C. §§ 31301, *et seq*.

is claiming to possess a lien.  Therefore,

> [i]n order to prove a maritime lien under the statute, [Plaintiff] must show (1) that it furnished repairs, supplies or other necessaries, (2) to the vessel, (3) upon the order of the owner of the vessel or a person authorized by the owner under 46 U.S.C. § 31341.... The term "necessaries" includes "repairs, supplies, towage, and the use of a dry dock or marine railway."  46 U.S.C. § 31301(4).  Courts have interpreted "necessaries" to include "any goods and services 'reasonably needed' in a ship's business for a vessel's continued operation."

GMD Shipyard Corp. v. M/V ANTHEA Y, No. 03 Civ.2748 RWS, 2004 WL 2251670, at *6

(S.D.N.Y. Oct. 6, 2004) (Sweet, D.J.) (citations omitted).  See also Newport News Shipbuilding and

Dry Dock Co. v. S.S. Independence, 872 F. Supp. 262, 266 (E.D. Va. 1994) ("[t]o enforce its

maritime lien... plaintiff must show: (1) that plaintiff performed services on the vessel; (2) that

charges for those services were reasonable; (3) that services were "necessaries," as defined by 46

U.S.C. § 31301(4); and (4) that the person who placed the order had the real, apparent or statutorily

presumed authority to do so.") (citing S.E.L. Maduro (Florida), Inc. v. M/V ANTONIO de

Gastaneta, 833 F.2d 1477, 1482 (11th Cir. 1987)).

     This Court will evaluate Plaintiff's claims under the Maritime Commercial Instruments and

Liens Act ("MCILA") (46 U.S.C. § 31301, et seq.), formerly the Federal Maritime Lien Act

("FMLA"), and the related federal statutory and case law.  See Norkin, 820 F. Supp. 791; Newport

News, 872 F. Supp. 262.  Although the FMLA was recodified in 1988, and replaced with the

MCILA, prior case law is instructive and applicable.  See Anthea Y, 2004 WL 2251670, at *6.

     To the extent the Court considers any related issue of breach of contract for the supply of

necessaries, the Court recognizes the prevailing State law and general common law elements for

breach of contract from New York law, as recognized by Federal courts, and will keep an eye to

those.  "The essential elements of a breach of contract claim are: (1) the formation of an agreement

by an offer, acceptance, and consideration; (2) performance by one party; (3) breach of the
agreement by the other party; and (4) damages." Engler v. Cendant Corp., No. 04-CV-
052159(ADS)(MLO), 2006 WL 1408583, at *11 (E.D.N.Y. May 23, 2006) (citing, *inter alia*, First
Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 169 (2d Cir. 1998); Kaplan v. Aspen Knolls
Corp., 209 F. Supp. 2d 335, 337 (E.D.N.Y. 2003)).

## III. DISCUSSION

Following a bench trial that took place over three days, and after review of the record, the
submissions of the parties, and the trial exhibits, the Court makes the following findings.

### A.  Findings of Fact & Conclusions of Law

Defendant Timothy Baker ("Defendant Baker") is the owner of Defendant Vessel
(previously "40' Unnamed Ketch", but now known as "Royal Arc II"), bearing engine number 2-
1913-211518. See Verified Complaint (Dkt. No. 1) at ¶ 3; TR II (Dkt. No. 38) at 147 [4]; Plntf's
Prop. Find. of Fact & Concl. of Law (Dkt. No. 44) at ¶ 4. Defendant Baker contracted with Plaintiff
for work to be performed on Defendant vessel - namely maintenance, repair work, alterations, work
to allow the vessel to be sailed in the ocean, and the like - at several different times beginning in
1999. See, *inter alia*, TR I (Dkt. No. 37) at 11-16. The vessel was already in the water by 1998-99,
and Defendant had frequently sailed in it. See id. at 13; TR II (Dkt. No. 38) at 149-50. The work
Plaintiff undertook was to, *inter alia*, correct issues pertaining to the survey of the boat in 1999. See
TR II (Dkt. No. 38) at 151-56. Defendant Baker had paid Plaintiff in full for the work performed at

---

[4] "TR" refers to the Trial Transcript. There were three days of testimony, so the first day
will be cited as "TR I", the second day as "TR II", and the third day as "TR III".

earlier times in 1999 and 2000, and that earlier work is not at issue in the current lawsuit.  See TR I (Dkt. No. 37) at 12, 14, 19.  This lawsuit concerns work performed from January 2002 through September 2002.  Id. at 16.

Plaintiff brought this action to recover the unpaid remainder on the bills for the work performed, labor undertaken, materials supplied, interest accrued, sales taxes paid, and prejudgment interest.  See Verified Complaint (Dkt. No. 1); Plntf's Prop. Find. of Fact & Concl. of Law (Dkt. No. 44); Plntf's Post-Trial Brief (Dkt. No. 45) at 2.  Defendant Baker brought a counterclaim seeking what he alleges is the decrease in value of the vessel from the time period before Plaintiff worked on the boat until the time period after said work - alleging that poor workmanship by Plaintiff substantially decreased the value and seaworthiness of the vessel.  See Answer (Dkt. No. 4); TR III (Dkt. No. 39) at 219-20.

Plaintiff maintained a notebook and other rudimentary documentation, keeping records of the work performed on Defendant vessel, materials purchased[5], costs accrued, and hours for labor. See Plntf's Post-Trial Brief (Dkt. No. 45) at 2; TR I (Dkt. No. 37) at 25-30 (& Plntf's Trial Exs. 1 & 4).  The notebook, although not a model of clarity, sets forth hours worked, material costs, balances due for each month of work, and payments made by Defendant Baker and credited to the account. See Notebook, Plntf's Trial Ex. 4.

As far as the existence of a contract in this matter, the Court finds that a contract or agreement for the work performed by Plaintiff did exist between the parties.  Despite its oral nature - with hardly any writing at all between the parties - the Court notes oral contracts that may be fully performed within one year, or which actually are performed within one year, are generally excluded

---

[5] Including a certain number of receipts for materials.  See Plntf's Trial Ex. 3.

8

from the operation of the Statute of Frauds.  See RESTATEMENT (SECOND) OF CONTRACTS § 130 &

cmt. a.  See, generally, Cron v. Hargro Fabrics, Inc., 91 N.Y.2d 362, 367-68 (1998); D & N

Boening, Inc. v. Kirsch Beverages, Inc., 63 N.Y.2d 449 (1984); P. J. Carlin Constr. Co. v. Whiffen

Elec. Co., Inc., 411 N.Y.S.2d 27 (1st Dep't 1978).  In the case at bar, the Court finds that it was

possible and plausible for Plaintiff to have completed all contracted-for work on Defendant vessel

within one year, depending on staffing level (see TR I (Dkt. No. 37) at 20), speed of work and

Defendant Baker's necessary payments within that same time period.[6]  Furthermore, the United

States Supreme Court has recognized that "it is an established rule of ancient respectability that oral

contracts are generally regarded as valid by maritime law."  Kossick v. United Fruit Co., 365 U.S.

731, 734 (1961).[7]

    The Court will now consider the terms and performance of the contract.  Photographs were

taken of Defendant vessel following some of Plaintiff's work.  Those photographs were admitted

into evidence during the trial.  See TR I (Dkt. No. 37) at 79-81, 96-99. See also Plntf's Trial Exs.

5(A)-(C); Defts' Trial Exs. 15(B)-(F).  At one point in this litigation, Defendants attempted to

display the photographs of "blueing" as an example of poor workmanship which voided

Defendants' responsibilities to pay under the contract.  But, Plaintiff has explained the blueing

occurrence to the satisfaction of this Court.  The welding of the port lights was done correctly, and

---

    [6] In fact, the Court notes that Defendants attempt to argue that the work should have taken three (3) months.  See Defts' Prop. Find. of Fact & Concl. of Law (Dkt. No. 43) at ¶ 2.

    [7] In a related vein, nuncupative (oral or unwritten) wills of mariners and sailors at sea are deemed valid, and will be probated, under certain circumstances - thus receiving different treatment in the law of trusts and estates.  See In re Mason's Will, 200 N.Y.S. 901, 905 (Surr. Ct. Kings County 1923) (soldiers and seamen are considered part of "privileged classes" in this area of law); N.Y. EST. POWERS & TRUSTS LAW § 3-2.2; 95 C.J.S. Wills § 340 (2006); N.Y. PRACTICE Trusts & Estates § 3:157 (2005).

"blueing... [is] a reaction of heat on the stainless steel along with oxygen from the air.... [I]t's a discoloration.  But it's standard.  It happens to all metals, with the exception of aluminum...."  TR I (Dkt. No. 37) at 73-74.  See also Plntf's Post-Trial Brief (Dkt. No. 45) at 4.  Furthermore, during his testimony at trial, Plaintiff demonstrated that he had an understanding of what could damage a vessel, and he demonstrated that he would want to avoid such damage.  "You can remove [blueing] with a wire brush.  But depending on the application -- in this case, these are a high polished port light, which, one you wouldn't want to take the blueing off with a wire brush because you would scratch the surface, and when you polish it later, it would be more difficult.... [In addition] [b]lueing is not any kind of damage.  It's a completely natural thing."  TR I (Dkt. No. 37) at 74-75.  Instead, Plaintiff testified that buffing would remove the blueing effect from the steel, and forever replace the blueing with a polished finish - thus resulting in no damage to the vessel from the blueing.  Id. at 92-93.

It is noted that according to Plaintiff, Defendant Baker, between January and September 2002, paid Plaintiff eighty-one thousand four hundred and fifty dollars ($81,450.00) for work performed on Defendant vessel.  Plntf's Prop. Find. of Fact & Concl. of Law (Dkt. No. 44) at ¶ 13.  In fact, according to Plaintiff, Defendant Baker paid Plaintiff close to eighty-one percent of the outstanding bills prior to the commencement of this lawsuit.  See Plntf's Post-Trial Brief (Dkt. No. 45) at 2 ("Plaintiff invoiced Defendant Baker $100,861.04 for labor, materials and sales tax, and Defendant Baker has made payments of $81,450.00.") (citing Plntf's Trial Ex. 2).  However, this lawsuit concerns the unpaid balance due to Plaintiff, plus interest and sales tax, and prejudgment interest.  Defendant Baker did not submit records, receipts or cancelled checks to demonstrate payments he made to Plaintiff, but Defendant Baker believes that he actually paid Plaintiff

somewhere around ninety or one hundred thousand dollars.  <u>See</u> TR III (Dkt. No. 39) at 225-226.

Defendant Baker testified that he could estimate what had been paid from memory of events -

several years earlier.  <u>Id.</u>

   Furthermore, the Court notes that Defendant Baker made visits to Jeff's Yacht Haven and

Plaintiff's shop, where the vessel was located, and, <i>inter alia</i>, inspected the vessel from time to

time, spoke with Plaintiff regarding work performed on the vessel, and made payments to Plaintiff -

including significant payments of sometimes fourteen thousand dollars ($14,000) or twenty

thousand dollars ($20,000) in one month.  <u>See</u> TR III (Dkt. No. 39) at 230-37; Defts' Post-Trial

Brief (Dkt. No. 42) at 3.  The evidence and record clearly demonstrate that Plaintiff and Defendant

worked together, Defendant Baker authorized Plaintiff's work and expenditures, and that, at least

for the first eighty-one thousand dollars of payments Defendant Baker did not dispute the work, and

did not instruct Plaintiff to cease and desist any work up until the time of this dispute.  In fact, often

Defendant did not even ask for, and did not receive, receipts from Plaintiff.[8]  TR III (Dkt. No. 39) at

230-31.  Defendant Baker complains that no bills, invoices, or receipts for materials - in effect no

writings - were produced by Plaintiff, and contends, therefore, that the Court should not allow the

claimed costs as Plaintiff performed unauthorized work.  <u>See</u> Defts' Post-Trial Brief (Dkt. No. 42);

Defts' Prop. Find. of Fact & Concl. of Law (Dkt. No. 43).  Yet, Plaintiff testified that he always

discussed work and repairs with Defendant Baker before any undertaking, <u>see</u> TR II (Dkt. No. 38) at

120; and the Court recognizes that Defendant Baker made significant and substantial payments to

Plaintiff in early and mid-2002.  In reviewing the record and submissions, the Court finds that

---

   [8] The Court notes that Defendant Baker is an educated man - a forensic psychologist.  <u>See</u>
TR II (Dkt. No. 38) at 147.  As such, the Court finds that he is knowledgeable in the ways of
business and billing for services.

Defendant Baker's actions in early and mid-2002 simply do not correspond with what one would expect of someone who is unhappy with work being performed on an expensive vessel, or of someone who is unhappy with the business practices of the person performing the work.

This is an unfortunate case, given the significant lack of written agreements, invoices, and the like between the parties. However, the Court finds, based upon the record, the trial testimony, the evidence and the pleadings of the parties, that a contract existed between the parties to this action - Plaintiff and Defendant Baker - for the performance of repair and construction work, supply of materials, and supply of other necessaries to Defendant vessel at issue in the present suit. Said necessaries were supplied at the request of, and under order from, the owner of Defendant vessel - Defendant Baker - as was understood by Plaintiff.

The issue of cost for labor under the contract remains to be determined. According to Plaintiff, the contract's terms included, *inter alia*, a "list" of substantial work and materials, and a rate for labor of fifty-five dollars ($55.00) per hour for work performed by Plaintiff - a rate which was posted in Plaintiff's place of business. See TR I (Dkt. No. 37) at 17-18, 20; Plntf's Prop. Find. of Fact & Concl. of Law (Dkt. No. 44) at ¶ 8. Defendants, however, have argued that the agreed-upon rate was only forty dollars ($40) per hour. See TR II (Dkt. No. 38) at 162; Defts' Post-Trial Brief (Dkt. No. 42) at 1-2; Defts' Prop. Find. of Fact & Concl. of Law (Dkt. No. 43) at ¶ 2. Plaintiff has explained the discrepancy, testifying that a rate of around forty-five to forty-eight dollars ($45 - $48) per hour had been charged for the earlier work, performed in 1999 and 2000. See TR II (Dkt. No. 38) at 116. Defendant has acknowledged that the $40 rate argued for was charged for the work performed prior to 2001. See Defts' Post-Trial Brief (Dkt. No. 42) at 2. But, costs for work on a boat can and do increase over time.

12

As Plaintiff testified at both a prior deposition and at trial, the rate for the work in 2002 was fifty-five dollars ($55) per hour; Plaintiff had charged this rate to Defendant Baker; Defendant Baker had paid at that rate; and the rate was posted in Plaintiff's shop - in which Defendant Baker had spent time.  See TR II (Dkt. No. 38) at 139-40.  In fact, reviewing the Notebook (Plntf's Trial Ex. 4) it appears that from the first entry on page one, Plaintiff charged Defendant for labor at a rate of $55 per hour, and the Notebook reflects payment of certain sums by Defendant Baker for a number of months - indicating to this Court that Defendant Baker consented to the charges.  See, inter alia, Notebook, Plntf's Trial Ex. 4, at 1-2, 7.  The Court, therefore, accepts Plaintiff's testimony, and the rate of $55 per hour as the prevailing contract rate in this matter.

In addition, Plaintiff has stated that he had an established interest rate for overdue bills of 1.5% per month (18% per annum), corresponding to invoices, business practice, and a sign posted at Plaintiff's place of business.  See TR II (Dkt. No. 38) at 118; Plntf's Prop. Find. of Fact & Concl. of Law (Dkt. No. 44) at ¶ 14; Plntf's Post-Trial Brief (Dkt. No. 45) at 3.  Defendants argue that the issue of an interest rate was never discussed between the parties.  See Defts' Post-Trial Brief (Dkt. No. 42) at 1-2; Defts' Prop. Find. of Fact & Concl. of Law (Dkt. No. 43) at ¶ 2.  Based upon a review of the record and testimony, however, the Court finds in favor of Plaintiff on this point, as well, and finds that an interest rate of 1.5% per month (18% per annum) is applicable to the contract/agreement at issue.[9]

---

[9] It is noted that amidst the evidence presented at trial is Plaintiff's Exhibit 2 - spreadsheets showing monthly charges, accrued costs, and prior balances, as well as notations indicating a rate of $55 per hour for labor, and a 1.5% monthly interest rate applicable to all bills more than five (5) days old.  See Plntf's Trial Ex. 2.  The Court recognizes that Plaintiff has argued that the 1.5% interest rate is "usual business practice", see Plntf's Prop. Find. of Fact & Concl. of Law (Dkt. No. 44) at ¶ 14, and, indeed, the rate mirrors provisions found on the receipts of other businesses, such as Spinnenweber Supply Company and Fall Steel, Inc., see Plntf's Trial Ex. 3.

13

Given the discussion above, it is the conclusion of this Court that Defendant Baker has breached the contract between himself and Plaintiff. Defendant owes the remainder of the outstanding sums billed, and failure to pay said sums has led to the existence of a maritime lien on Defendant vessel. Plaintiff has established that said lien exists, and that the underlying sums are owed to Plaintiff. Furthermore, Defendant vessel does not appear to be as physically damaged, or lessened in value, as Defendant Baker claims. Plaintiff has explained what needs to be done to remedy some of the problems, including the blueing, and Plaintiff has not been permitted to complete his work on the vessel, and the vessel has been in dry-dock, due to Defendant Baker refusing further payment under the agreement, and Plaintiff's need to pursue this lawsuit. If Plaintiff had been permitted to complete the work that was begun, and if Defendant had furnished full payment as required, the Court finds that the vessel would still be seaworthy and would not be considered damaged.

**Therefore, the Court finds in favor of Plaintiff, and denies Defendants' Counterclaim**. Defendants shall pay damages to Plaintiff in the amount of twenty-four thousand four hundred and five dollars and eighty-three cents ($24,405.83) in principal owed. Furthermore, "[i]n admiralty cases prejudgment interest 'should be granted in the absence of exceptional circumstances.'" M/V SAVA, 47 F. Supp. 2d at 353 (citing and quoting Magee v. United States Lines, Inc., 976 F.2d 821, 822 (2d Cir. 1992)). Generally, district courts have broad discretion in determining both the interest rate to be used and the date from which the calculations will run for prejudgment interest. See M/V SAVA, 47 F. Supp. 2d at 353 ("[i]t is within the broad discretion of the district court to determine the rate of interest and the date on which it commences....") (citing, *inter alia*, Independent Bulk Transp., Inc. v. VESSEL "MORANIA ABACO", 676 F.2d 23, 27 (2d Cir. 1982); Standard Marine

14

Towing Services, Inc. v. M.T. DUA MAR, 708 F. Supp. 562, 569 (S.D.N.Y. 1989); McCrann v. United States Lines, Inc., 803 F.2d 771, 774 (2d Cir. 1986)).  However, Plaintiff requests a pre-judgment interest rate of 1.5% per month.  Plntf's Prop. Find. of Fact & Concl. of Law (Dkt. No. 44) at 5; Plntf's Post-Trial Brief (Dkt. No. 45) at 6-7.  This Court will grant that interest rate. Therefore, prejudgment interest shall be calculated at the rate of 1.5% per month (18% per annum), from March 2004 through the date of the judgment.

In addition, if Defendants should fail to pay said amounts owed within sixty (60) days from the filing date of the judgment, Defendant vessel shall be seized and sold by the United States Marshal so as to recover the amounts owed.  However, if the sale of said vessel shall not suffice to repay all monies owed pursuant to the judgment, Defendant Baker shall still be liable for the remainder, *in personam*.

### B.  Fees and Charges for Storage of Defendant Vessel

The request for storage fees for Jeff's Yacht Haven is no longer at issue, given the stipulation, on the record, that storage charges and fees are no longer claimed by Plaintiff.  See Minute Entry (Dkt. No. 33) at 1; TR II (Dkt. No. 38) at 138-139.

### C.  Costs and Attorney's Fees

Plaintiff seeks costs and attorney's fees.  Generally, parties bear their own costs of litigation. However, "[t]he general rule in admiralty actions is that such an award 'is discretionary with the district judge upon a finding of bad faith.'"  Fortis Corp. Ins., S.A. v. M/V Cielo Del Canada, 320 F. Supp. 2d 95, 108 (S.D.N.Y. 2004) (Lynch, D.J.) (citing and quoting Ingersoll Milling Mach. Co. v.

M/V Bodena, 829 F.2d 293, 309 (2d Cir. 1987)).  See also New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.), 266 F.3d 112, 130 (2d Cir. 2001).

While the Court acknowledges that Plaintiff has prevailed in this action, the Court does not find bad faith on the part of Defendants.  This is a case of a dispute over payment for the supply of necessaries - which arises from an unwritten contract between the parties.  As stated in the discussion above, Defendant Baker had rendered payment for a significant portion of the bills as charged by Plaintiff prior to Plaintiff bringing the present action concerning the dispute over the remaining bills.  In addition, Plaintiff has not specifically alleged or argued that Defendant Baker acted in bad faith.  Thus, with no finding of particular bad faith on the part of Defendants, the Court denies Plaintiff's request for costs and attorney's fees.  See also Eurosteel Corp. v. M/V KOGGEGRACHT, No. 01Civ.7731(DLC)(FM), 2003 WL 470575, at *4 (S.D.N.Y. Jan. 20, 2003) (citing cases), Report and Recommendation Adopted by, No. 01 Civ. 7731(DLC), 2003 WL 1872652 (S.D.N.Y. Apr. 11, 2003).

The Court also denies attorney's fees in this action as the claim was brought as a maritime lien.  In such a situation, other courts have similarly denied attorney's fees requests for *in rem* suits because "[a]ttorneys' fees are not 'necessaries' as defined by the Liens Act."  M/V SAVA, 47 F. Supp. 2d at 353 (citing, *inter alia*, Bradford Marine, Inc. v. M/V SEA FALCON, 64 F.3d 585 (11th Cir. 1995)).

### IV. CONCLUSION

Therefore, based on the foregoing discussion, it is hereby

**ORDERED**, that the Court **FINDS IN FAVOR OF PLAINTIFF**; and it is further

ORDERED, that Defendants' Counterclaim (Dkt. No. 4) is **DENIED**; and it is further

ORDERED, that Defendants shall pay damages to Plaintiff in the amount of **TWENTY-FOUR THOUSAND FOUR HUNDRED AND FIVE DOLLARS AND EIGHTY-THREE CENTS ($24,405.83) in principal owed**; and it is further

ORDERED, that Plaintiff's request for pre-judgment interest is **GRANTED**. Prejudgment interest shall be **calculated at the rate of ONE AND ONE-HALF PERCENT (1.5%) per month (18% per annum), from March 2004 through the date of the judgment**; and it is further

ORDERED, that if Defendants fail to pay said amounts owed within **SIXTY (60) DAYS** of the filing date of the judgment, Defendant vessel shall be seized and sold by the United States Marshal so as to recover the amounts owed. However, if the sale of said vessel shall not suffice to repay all monies owed pursuant to the judgment, Defendant Baker shall still be liable for the remainder, *in personam*; and it is further

ORDERED, that Plaintiff's request for storage fees for Jeff's Yacht Haven is **DENIED AS MOOT**; and it is further

ORDERED, that Plaintiff's request for costs and attorney's fees is **DENIED**; and it is further

ORDERED, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:       August 08, 2006
                   Albany, New York

Lawrence E. Kahn
U.S. District Judge

17